UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

———

No. 1:26-cv-01321

———

**Joaquin Cazares Tapia,**
*Petitioner,*

v.

**Markwayne Mullin, Secretary of the United States Department of Homeland Security, et al.,**
*Respondents.*

———

## ORDER

Joaquin Cazares Tapia is a native and citizen of Mexico currently being detained by Respondents pending removal proceedings pursuant to 28 U.S.C. § 1225(b)(2)(A). He filed a petition for a writ of habeas corpus demanding immediate release or an individualized bond hearing, as well as a declaration that his detention without a bond hearing violates the Due Process Clause, the Administrative Procedure Act ("APA"), the Suspension Clause, and agency regulations. Because his detention is lawful, the petition is denied.

## BACKGROUND

Petitioner entered the United States without inspection sometime around 1999 and has resided here since. He has been continuously employed, has multiple children, and has no criminal record. On May 11, 2026, he was detained as part of a traffic stop and then taken into custody by federal agents.

Since May 11, 2026, Petitioner has been in custody and is currently detained by Respondents at the T. Don Hutto Detention Center in Taylor, Texas. He is being detained pending his removal proceedings, and has neither requested nor

received an individualized bond hearing or custody redetermination to contest his detention. His next scheduled hearing in his removal process is set for June 9, 2026.

On May 18, 2026, Petitioner filed a petition for a writ of habeas corpus contesting his detention and seeking either immediate release or an individualized bond hearing at which he could demonstrate that he is entitled to release during removal proceedings. This Court ordered Respondents to show cause why the writ should not be granted. Respondents answered and Petitioner shortly thereafter filed a reply.

### LEGAL STANDARD

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST. art. I, § 9, cl. 2). Through 28 U.S.C. § 2241, Congress authorized federal district courts to entertain habeas corpus petitions, including petitions brought by noncitizens such as Petitioner challenging the lawfulness of their immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003) (confirming section 2241 jurisdiction over a constitutional challenge to immigration detention); *see also Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). The writ exists to "grant relief from unlawful imprisonment or custody," *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976), and does not reach a challenge to a final order of removal, which Congress has channeled exclusively to the courts of appeals, *see* 8 U.S.C. § 1252(a)(5).

To obtain the writ, a petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam). The petitioner bears the burden of demonstrating that the challenged custody is unlawful,

2

and the Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

ANALYSIS

Petitioner asserts that his pre-removal detention without an individualized bond hearing is unlawful multiple times over, including because it contravenes the statutory text, violates Due Process, is arbitrary and capricious, constitutes a suspension of the writ, and violates his rights as a member of a certified "bond eligible" class. Each assertion, however, fails. Congress expressly authorized detention of an alien "for a [removal] proceeding" without an individualized bond hearing. 8 U.S.C. § 1225(b)(2)(A). And "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. Neither the statutory text nor the Due Process clause therefore requires granting the writ, and none of Petitioner's ancillary arguments require it either.

## I. The Statutory Text Requires Petitioner's Detention.

Petitioner contends that Respondents cannot detain him without an individualized bond hearing because he does not qualify as "an alien seeking admission" under section 1225 of Title 8 of the United States Code. Petitioner recognizes that the Fifth Circuit recently rejected this argument in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 494–508 (5th Cir. 2026), and that this Court is bound by that decision. He thus raises the statutory argument only for preservation purposes. Still, it is worth taking a minute to briefly walk through the statutory argument and the Fifth Circuit's reasoning in *Buenrostro* as useful background and context for Petitioner's other arguments.

3

The petitioner in *Buenrostro*, like Petitioner here, was being detained without a bond hearing for the pendency of his removal proceedings pursuant to section 1225(b)(2)(A). The petitioner argued that this was unlawful because section 1225(b)(2)(A) authorizes detention without bond pending removal proceedings only for "an alien seeking admission[.]" 8 U.S.C. § 1225(b)(2)(A). Because the petitioner had been living in the interior of the United States unlawfully for years without taking steps to become legally admitted to the United States, he argued that he was not an "alien seeking admission[,]" as the statute requires. He posits that his detention must instead be subject to section 1226(a), a provision that authorizes detention of an alien "pending a decision on whether the alien is to be removed from the United States[,]" 8 U.S.C. § 1226(a), and that—unlike section 1225(b)(2)(A)—permits "discretionary release on bond[.]" *Buenrostro*, 166 F.4th at 498.

The Fifth Circuit rejected that argument. The plain language of the Immigration and Nationality Act ("INA") states that any alien "present in the United States who has not been admitted" is "deemed . . . an applicant for admission." 8 U.S.C. §§ 1225(a)(1), 1101(a)(13)(A). The Court read this as the INA adopting a legal fiction where an alien is treated as an applicant for admission so long as he is present in the United States and not admitted. *Buenrostro*, 166 F.4th at 502 (recognizing that "[p]resence without admission deems the petitioners to be applicants for admission"); *see also Lopez-Campos v. Raycraft*, 175 F.4th 713, 743 (6th Cir. 2026) (Murphy, J., dissenting) (describing section 1225(a)(1)'s designation as a "legal fiction"). The Court then explained that, although section 1225(b)(2)(A) applies to "an alien *seeking* admission," there is "no material disjunction . . . between the concept of 'applying' for something and 'seeking' something." *Buenrostro*, 166 F.4th at 499, 502 (emphasis added). An alien who enters the United

4

States without inspection and remains here unlawfully (even for years) is an alien "seeking admission" under section 1225(b)(2)(A) and subject to its mandatory detention command.

## II. Due Process Does Not Require an Individualized Bond Hearing.

Because *Buenrostro* forecloses Petitioner's statutory claim, the Court turns next to his claim that the Due Process Clause of the Fifth Amendment requires an individualized bond hearing. The Court rejects this substantive due process claim because aliens—even those who could prove they are neither a flight risk nor a danger to the community—do not have a deeply rooted right to be released into the United States during their deportation or removal proceedings. *See Demore*, 538 U.S. at 531. To the extent Petitioner's claim sounds instead in procedural due process, the Court rejects it because the Due Process Clause does not require an opportunity to prove facts that have no bearing on the lawfulness of a person's detention. *See Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7 (2003).

### A. Substantive due process

Petitioner is currently in removal proceedings to determine whether he is removable from the United States. "The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). An alien in removal proceedings may also "apply for asylum on the ground that he or she would be persecuted if returned to his or her home country." *Id.* (citing 8 U.S.C. § 1229a(b)(4); 8 C.F.R. § 1240.11(c) (2020)). "If that claim is rejected and the

alien is ordered removed," he has multiple levels of appellate rights to challenge that determination. *Id*.

Congress decided that aliens in this process are subject to mandatory detention under section 1225(b)(2)(A). *See supra* (discussing *Buenrostro*). But Petitioner asserts that this mandatory detention violates due process. According to him, the Constitution prohibits detaining him throughout the removal process unless there has been a determination that he is a flight risk or a danger to the community. This claim fundamentally sounds in *substantive* due process, because it challenges the substance of Congress' determination that any alien meeting the conditions set forth in section 1225(b)(2)(A) must be detained, regardless of whether that individual is a flight risk or danger to the community. *See Reno v. Flores*, 507 U.S. 292, 301–02 (1993) (explaining that a "substantive due process" claim asserts that the due process clause "forbids the government to infringe certain 'fundamental' liberty interests *at all,* no matter what process is provided").

This substantive due process claim fails because Petitioner has not identified a fundamental right that Respondents are infringing. The Due Process Clause prohibits the Government from "depriv[ing]" a "person" of "life, liberty or property, without due process of law[.]" U.S. CONST. amend. V. So when making a substantive due process claim, a party must "careful[ly]" describe the right of which the Government is depriving him. *Reno*, 507 U.S. at 302.

Petitioner asserts he is being deprived of his well-recognized liberty right to be free from restraint. And to be sure, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. But this characterizes the supposed right at issue here too broadly. Petitioner does not simply

6

assert a right to be free from detention. He instead asserts a narrower "right to remain at large *in this country* during [his] removal proceedings." *Lopez-Campos*, 175 F.4th at 760 (Murphy, J., dissenting) (emphasis added). He "does not want 'simple release' but, ultimately, the opportunity to remain . . . in the United States" pending his removal proceedings. *Thuraissigiam*, 591 U.S. at 119. To say that he asserts a right only from detention is not a "careful description" of the asserted right, *Reno*, 507 U.S. at 302, especially given that Petitioner has "the keys in his pocket" to end his detention immediately by "withdraw[ing] his defense of the removal proceeding and return[ing] to his native land." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999).

Once carefully described, it is clear that the right asserted here—the right for an alien to be released into the interior of the United States during his immigration proceedings—is not one of "'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)). To the contrary, the Supreme Court has long held that aliens do not have a right to be present in the United States. *See Fong Yue Ting v. United States*, 149 U.S. 698, 707 (1893). This is unsurprising, as the political branches must have control over who is released into the interior of the country. Consistent since the Founding, "the through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12. And the historical distinction drawn between citizen and alien not only affects the sovereign's exercise of power, but explains why "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

Detaining an individual during immigration proceedings thus does not require an individualized determination of flight risk or dangerousness to satisfy due process unless Congress decides to make that a condition of detention. "[P]rior to 1907 there was no provision permitting bail for *any* aliens during the pendency of their deportation proceedings." *Demore,* 538 U.S. at 523 n.7. And since then, the Supreme Court has repeatedly held that the Due Process Clause does not require it. In *Demore v. Kim*, the Supreme Court held that criminal immigrants detained during their removal proceedings under 8 U.S.C. § 1226(c) are not entitled to individual bond hearings. *Id.* at 523–31. Likewise, in *Reno v. Flores*, the Supreme Court held that detained juvenile aliens were not entitled to a "best interest" hearing to determine where to place them during their removal proceedings. *Reno,* 507 U.S. at 302–06. And in *Carlson v. Landon*, the Court held that Communist aliens were not entitled to individual dangerousness or flight risk findings during their removal proceedings. 342 U.S. 524, 537–42 (1952). Indeed, it appears so well established that "Congress has the authority to detain aliens suspected of entering the country illegally pending their deportation hearings" that the petitioners in *Reno* did not even dispute the point. *Reno,* 507 U.S. at 306.

This does not mean that the Government has a blank check to detain aliens indefinitely for any reason or no reason at all. The Supreme Court in *Zadvydas* explained that due process may limit detention when detention does not serve immigration-related purposes. 533 U.S. at 690. The statutory provision at issue in that case permitted continued detention of an alien who had been ordered removed but had not yet been removed. *Id.* at 682 (addressing 8 U.S.C. § 1231(a)(6)). But to avoid a "serious constitutional problem" with "indefinite detention" for those aliens who could not be removed because

no other country would accept them, the Court read the provision to allow only detention that is "reasonably necessary to bring about that alien's removal." *Id.* at 689–90. Because the "basic purpose" of detention was to assure "the alien's presence at the moment of removal[,]" the Court explained that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized[.]" *Id.* at 699.

*Zadvydas* has no application here because Petitioner's detention serves Congress' lawful and rational immigration "purpose of preventing [removable] aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528. Accordingly, detention here, like in *Demore*, not only serves an immigration purpose, but is similarly temporally limited because it "has a definite termination point," *id.* at 529, lasting only "during the limited period necessary for [the] removal proceedings," *id.* at 526—not the "indefinite" and "potentially permanent" detention serving no immigration purpose that troubled the Court in *Zadvydas, id.* at 528–29 (quoting *Zadvydas*, 533 U.S. at 690–91).

Petitioner disagrees with Congress' decision to authorize Respondents to detain aliens during removal proceedings without making individualized determinations about flight risk or dangerousness. But all that due process requires in this context is that the decision is rational. *Reno*, 507 U.S. at 303 (applying the rational basis test). It is. As the Fifth Circuit recently explained, there is evidence that "when aliens are released from custody, nearly 90 percent abscond and are not removed from the United States." *Buenrostro*, 166 F.4th at 508 (quoting 62 Fed. Reg. 10312, 10323 (1997)). That data is admittedly dated, but the Fifth Circuit recently recognized that the same "situation exists today on a much larger scale." *Id.*

The Court rejects Petitioner's contention that the Due Process Clause prohibits Congress' categorical choice to detain aliens during their removal process.

### B. Procedural due process.

Petitioner asserts that his due process claim is also a procedural claim, arguing that due process entitles him to an opportunity to prove that he is neither a flight risk nor a danger to the community. Pet. at 9 (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)). But procedural "due process does not entitle [petitioners] to a hearing to establish a fact that is not material under the [governing] statute." *Connecticut Dep't of Pub. Safety*, 538 U.S. at 7. Because neither the Constitution nor section 1225(b)(2)(A) conditions detention on an individualized determination that an alien is a flight risk or a danger to the community, due process does not require Respondents to provide an opportunity for an alien to establish these facts.

Petitioner argues that, because *Doe* focused only on statutory criteria, applying *Doe* in the context of constitutional rights would be inappropriate, noting that "statutes [do not] dictate the reach of the Due Process Clause." Reply at 6. But neither section 1225(b)(2)(A) nor the Due Process Clause requires the decision to detain an alien during removal proceedings to turn on whether that specific alien is a flight risk or a danger to the community. *See supra* Parts I–II.A. That is why *Doe* applies. Petitioner's contrary argument that it does not apply because there is an underlying substantive constitutional right is really "just [his] 'substantive due process' argument recast in 'procedural due process' terms[.]" *Reno*, 507 U.S. at 308.

### III. The APA Precludes Judicial Review.

Petitioner has asked this Court to issue a writ of habeas corpus directing Respondents to effectuate his immediate release. He asserts that the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), invalidates his lack of a bond hearing because refusal to hold such a hearing "is arbitrary, capricious, and contrary to law and long-standing practice, including binding regulations," Pet. at 12. These claims fall short, as Petitioner cannot invoke the APA for judicial review when review and relief is available through a writ of habeas corpus. Even if he could, Petitioner lacks standing to assert the claims, as he has no standing to challenge agency action not included in the scope of relevant statutory authority.

Petitioner's habeas petition is fundamentally challenging his detention. Courts have made clear that habeas is the vehicle detainees must use to challenge their detentions. *See Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (per curiam) (claims for relief that "fall within the 'core' of the writ of habeas corpus . . . *must* be brought in habeas" (emphasis added)); *P. B. v. Bergami*, No. 3:25-CV-02978-O, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025) (reasoning that "any challenge to the validity of Petitioner's confinement must be brought in habeas and cannot be brought under [the APA]"). The writ's "sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre*, 525 F.2d at 935–36. These conclusions are buttressed by section 704 of the APA's exclusive remedies requirement: "Agency action made reviewable by statute and final agency action for which there is *no other adequate remedy* in a court are subject to judicial review." 5 U.S.C. § 704 (emphasis added). By requesting habeas relief—another time-honored judicial remedy—to challenge his detainment, Petitioner admits that an adequate remedy exists outside of the APA. The writ of

11

habeas corpus is available; *denial* of habeas petitions does not change the undeniable fact that the writ is accessible here.

Petitioner also references the INA's implementing regulations, *see generally* 8 C.F.R. §§ 236.1, 1236.1, and 1003.19, as proof that he is entitled to relief. Pet. at 14. But he does not explain why his detention, which is mandatory under section 1225, is unlawful due to the alleged regulatory noncompliance. If agency regulations contradict the plain text of the governing statute, the law enacted by Congress controls. *See Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022) ("[A] valid statute always prevails over a conflicting regulation[.]" (citation omitted)). As explained above, *see supra* Part I, section 1225(b)(2)(A) mandates detention, so any contravening regulations must give way to the statutory text. *See also Chi v. Warden, Bluebonnet Det. Facility*, No. 1:26-CV-067-H, 2026 WL 1062625, at *5–6 (N.D. Tex. Apr. 13, 2026).

To the extent that Petitioner's APA claim could be conceived as requiring that the relevant agency regulations be enforced—namely, to hold bond hearings—the "Fifth Circuit has confirmed in other contexts that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996))). Insofar as Petitioner is challenging the non-enforcement of certain regulations, those regulations contravene the plain text of the statute *and* the recent Board of Immigration Appeals decision in *Matter of Yajure Hurtado*. 29 I. & N. Dec. 216 (BIA 2025). Because immigration judges do not have the statutory authority to grant the relief Petitioner seeks, Petitioner lacks standing to challenge the procedures under the APA. *See Nat'l Credit Union Admin. v. First Nat. Bank*

12

*& Tr. Co.*, 522 U.S. 479, 488 (1998). As such, Petitioner's APA claim fails.

## IV. The Great Writ Has Not Been Suspended.

Petitioner separately maintains that his detention violates the Suspension Clause of the U.S. Constitution. U.S. CONST. art. I, § 9, cl. 2. That claim fails because this Court and courts across the country have been and continue to review habeas petitions filed by aliens like Petitioner who are detained under section 1225(b)(2)(A). That this Court and others may deny relief on the merits does not mean that the writ has been suspended.

The Great Writ of habeas corpus provides "a means of contesting the lawfulness of restraint and securing release." *Thuraissigiam*, 591 U.S. at 117. The writ "was brought to America by the colonists, and claimed as among the immemorial rights descended to them from their ancestors." *Ex parte Yerger*, 75 U.S. 85, 95 (1868). In England prior to the founding of our Republic, intense strife between Crown and subject birthed the Habeas Corpus Act of 1679, cementing in statute that which had existed only as a creature of common law. *See* PAUL D. HALLIDAY, HABEAS CORPUS: FROM ENGLAND TO EMPIRE 237–47 (2010) (describing the historical context of the Act); *see also* 1 W. BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 133 (1765) (describing the Act as a "second *magna carta*, and stable bulwark of our liberties").

Our Founders enshrined this foundational right in the Constitution's Suspension Clause, which provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2. Congress then gave federal courts the discretionary power to issue writs of habeas corpus through the Judiciary Act of 1789. *See* § 14, 1 Stat. 81–82. Under current federal law, "federal courts 'may'

grant habeas relief 'as law and justice require.'" *Brown v. Davenport*, 596 U.S. 118, 128 (2022) (quoting 28 U.S.C. §§ 2241, 2243). "Absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi*, 542 U.S. at 525 (citing U.S. CONST. art. I, § 9, cl. 2). Suspension is an exceedingly rare act saved for the most extraordinary circumstances. *See Thuraissigiam*, 591 U.S. at 132–33 (discussing past suspensions of the Great Writ); *see also* John Yoo, *Lincoln at War*, 38 VT. L. REV. 1, 17–21 (2013) (recounting President Lincoln's suspension of the Great Writ).

The writ is not suspended. This is plain from the fact that Petitioner and other detained aliens under section 1225(b)(2)(A) have been challenging, and continue to challenge, the lawfulness of their detention through petitions for writs of habeas corpus filed in district courts across the country. *See Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668 (W.D. Tex. 2025); *Mendoza v. Noem*, __ F. Supp. 3d __, No. 5:26-CV-0728-JKP, 2026 WL 809441 (W.D. Tex. Feb. 26, 2026). Courts entertain these petitions on the merits because section 1252(g) of the INA "does not bar courts from reviewing an alien detention order[.]" *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (explaining that a detention order, "while intimately related to efforts to deport, is not itself a decision to execute removal orders[.]") (internal quotation marks omitted). Some of those petitions succeed. *See Cervantes-Garcia v. Bondi*, __ F. Supp. 3d __, No. 1:26-CV-98-RP, 2026 WL 196519 (W.D. Tex. Jan. 23, 2026). Others fail. *Lopez Jaimes v. Lyons*, No. 5:26-CV-00686-MA, 2026 WL 475298 (W.D. Tex. Feb. 17, 2026). But success on the merits of a petition does not determine whether the writ is suspended. The Suspension Clause instead requires only the *availability* of review to challenge the lawfulness of detention. *See Boumediene v. Bush*, 553 U.S. 723, 745–46 (2008).

14

Petitioner's argument to the contrary misapprehends what the writ protects. Petitioner argues that the writ is suspended because he has "no administrative pathway to challenge the legality, duration, or necessity of his detention." Pet. at 13. He is correct that there is no real administrative pathway because both the immigration judge and the Board of Immigration Appeals lack jurisdiction to hold or require a bond hearing for an alien detained under section 1225(b)(2)(A). But the lack of an administrative remedy does not amount to a suspension of the writ where, as here, an individual can seek relief from a federal court, and the federal court is empowered to provide that relief if "law and justice require." 28 U.S.C. §§ 2241, 2243.

## V. Out-of-Circuit Class Actions Do Not Control.

Finally, Petitioner cites a class action suit from the Central District of California, but does not claim outright that he falls under the definition of class membership. *See Maldonado Bautista v. Santacruz*, 820 F. Supp. 3d 1016 (C.D. Cal. Feb. 18, 2026). Interpreting the pleadings liberally, we address this case out of completeness.

In *Maldonado Bautista*, the Central District of California purported to vacate *Yajure Hurtado*, the recent Board of Immigration Appeals decision addressing section 1225. 820 F. Supp. 3d at 1030. For many critical reasons, this case has no bearing on Petitioner's habeas writ. *See Calderon Lopez v. Lyons*, 813 F. Supp. 3d 692, 701–10 (N.D. Tex. 2025) (explaining that the Central District's orders exceeded its inherent judicial authority and contravened the INA's limits on judicial review). Critically, the reasoning underpinning the Central District's decision is contrary to the Fifth Circuit's *Buenrostro* decision. 166 F.4th at 502–08. As a district court, we are "not free to overturn our circuit's precedent." *Green v. Thomas*, 129 F.4th

15

877, 890 (5th Cir. 2025) (citation and quotation marks omitted). Petitioner cannot rely on *Maldonado Bautista* for relief.

\* \* \*

The petition for writ of habeas corpus is denied.

The Clerk is directed to serve this Order electronically on the United States Attorney's Office for the Western District of Texas.

*So ordered by the Court on June 8, 2026.*

ANDREW DAVIS
United States District Judge

16